# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES A. COX, K53474, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16−cv−1096−NJR |
| ) | |
| JACQUELINE LASHBROOK, ) | |
| CHRISTINE BROWN, ) | |
| ALLAN J. BRUMMEL, ) | |
| JOHN R. BALDWIN, ) | |
| JESSE D. CARPENTER, ) | |
| MRS. CLARK, ) | |
| MR. WOOD, ) | |
| T PEEK, ) | |
| BART LIND, ) | |
| MR. CLELAND, ) | |
| JEFF CRIPPS, ) | |
| MR. HEARTMAN, ) | |
| LPN M. HILL, ) | |
| CHARLES H. HECK, ) | |
| MARCUS A. MYERS, ) | |
| VIPIN SHAH, ) | |
| STACY BROWN, ) | |
| A HUSEMAN, ) | |
| MRS. BRINTNIE, and ) | |
| WEXFORD HEALTH SOURCES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff James A. Cox, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his First Amended Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues and issued

him a false disciplinary ticket in violation of the Eighth and Fourteenth Amendments. (Doc. 8). This case is now before the Court for a preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the First Amended Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Amended Complaint

In his First Amended Complaint (Doc. 8), Plaintiff makes the following allegations: on August 6, 2015, Plaintiff was attacked and beaten with a hard-cover book by his cellmate.

(Doc. 8, p. 60). Plaintiff screamed, kicked the cell door, and pressed the emergency button in his cell in order to get help. *Id.* Plaintiff pressed the emergency button for ten minutes, but no one responded or came to his cell to assist him. *Id.* After ten minutes, Plaintiff got the attention of an inmate worker who fetched the floor officer, Defendant Wood. (Doc. 8, p. 62). Wood opened the chuck-hole in the cell door and instructed Plaintiff to turn around and put his hands through the hole. *Id.* Plaintiff complied, rendering him defenseless. *Id.* Plaintiff's cellmate took advantage of Plaintiff's vulnerability and struck him on the left side of his face three or four times with the book. (Doc. 8, pp. 62-63). The corner of the book went into Plaintiff's left eye socket, causing the vessels in his left eyeball to burst and his eye to turn red. (Doc. 8, p. 63). Blood gushed from Plaintiff's eyebrow and eye socket on the left side of his face. (Doc. 8, p. 62). The officer screamed at Plaintiff's assailant to stop during this attack. *Id.* After the attack, Plaintiff's left eyelid was black and blue and swollen shut. (Doc. 8, p. 63).

Plaintiff was taken to the health care unit, and Defendant Peek, a nurse, cleaned the blood on Plaintiff's face. *Id.* She did not open his eyelid to inspect the severity of his eye injury. *Id.* She marked the injury as minor, with no follow-up treatment required, and Defendant Dr. Shah ultimately signed off on the report without actually examining Plaintiff. *Id.* Plaintiff spent only nine minutes in the health care unit that morning. (Doc. 8, p. 64). Defendant Lind, an intelligence officer, walked Plaintiff to the segregation building after he left the health care unit. *Id.* During the short walk, Lind asked Plaintiff questions about the incident. *Id.* Plaintiff requested photographs of his injury and to see a medical doctor, to which Lind replied a doctor would come to Plaintiff's building for sick call appointments and Plaintiff could be treated then. (Doc. 8, p. 65). Plaintiff found out later the doctor would only do sick call appointments once per week, and that he had just missed the doctor for that week. *Id.*

The next day, Plaintiff received a disciplinary ticket written by Lind. *Id.* The ticket included an admission by Plaintiff's cellmate that he had struck Plaintiff with a book. *Id.* Plaintiff wrote many request slips about the ticket, outlining the details of the attack and questioning why Lind, who was not present during the attack, wrote the ticket. *Id.* Plaintiff filed a grievance, alleging that Lind was covering up for Wood, who was present during the attack, because Wood was inexplicably absent from the paperwork on the issue. (Doc. 8, p. 67). Plaintiff also wrote to Lt. Furlow, who responded to one of his grievances. *Id.* Plaintiff asserts Pinckneyville's staff is trained to lie on fighting tickets, and Defendants Myers and Heck will always find both parties guilty, so the victim cannot sue the State of Illinois for failure to protect. (Doc. 8, p. 71).

After the attack, Plaintiff was put in segregation and was not given any medication or other means to alleviate his pain. (Doc. 8, pp. 67-68). He suffered "every minute of every day and nobody seemed to care. [He] begged everyone for help," to no avail. (Doc. 8, p. 68). Plaintiff signed up for sick call five times. *Id.* Ten days later, on August 16, 2015, Plaintiff was removed from the cell and saw a nurse, who added his name to the doctor call line. *Id.* On August 18, 2015, twelve days after the attack, Plaintiff saw a medical doctor for the first time. (Doc. 8, p. 69). Defendant Dr. Shah did not examine Plaintiff's eye injury, however, and in fact never got up from his chair during the appointment. *Id.* Shah told Plaintiff that he was not an eye doctor and was actually there to see Plaintiff for other medical issues. *Id.* Plaintiff told Shah his left eye pupil was stuck open and the light was hurting his eye and causing him headaches. *Id.* Shah then told Plaintiff he would personally put him in for an eye doctor referral. *Id.* After the appointment, Plaintiff was taken back to segregation. *Id.*

Plaintiff did not get to see the eye doctor right away. (Doc. 8, p. 70). Plaintiff wrote

4

twenty request slips to the health care unit and sent emergency grievances to Defendant Lashbrook about the issue, to no avail. *Id.* On September 19, 2015, Plaintiff was called to the health care unit to see Dr. Shah, who noted that he did not know why Plaintiff had not yet seen the eye doctor. *Id.* On September 22, 2015, forty-five days after the attack, Plaintiff was taken to the health care unit to see the eye doctor, Defendant Brummel. (Doc. 8, p. 73). Plaintiff explained that he was hit in the eye with the corner of a book, and Brummel noted that it was the first he had heard of it. *Id.* Brummel also noted that if he would have seen Plaintiff sooner, he could have treated the eye with specific eye drops that could have prevented further eye damage. *Id.* Brummel ordered prescription eye glasses for Plaintiff, but they were the wrong prescription. (Doc. 8, p. 74). Plaintiff's vision is still blurry. *Id.* Plaintiff's first appointment with Brummel lasted fifteen minutes. *Id.*

On December 1, 2015, Plaintiff was given a different eye examination and was told his vision in his left eye was deteriorating. *Id.* Brummel determined then, 115 days after Plaintiff's injury, that Plaintiff's injury warranted an x-ray of Plaintiff's eyes. *Id.* Plaintiff got an x-ray, and when Brummel reviewed the results, he admitted that there was clear damage to Plaintiff's left pupil. (Doc. 8, p. 75). Brummel told Plaintiff that he would not refer him for surgery despite his injuries because it is IDOC's policy to refuse to pay for eye surgery if an inmate still has one good eye. *Id.* Brummel told Plaintiff that he could pay for the surgery once he got out of prison. (Doc. 8, p. 76). On February 10, 2016, Plaintiff filed a grievance against Brummel for refusing to submit his surgery for approval. *Id.*

Plaintiff had 20/20 vision prior to the attack. *Id.* His vision is now blurry, and his eye glasses do not help. *Id.* Further, his left pupil does not open or close, instead remaining open at all times. *Id.* Plaintiff takes so much pain medication for his injuries that his stomach hurts him,

5

and he is dizzy and light-headed. (Doc. 8, p. 75). Plaintiff seeks monetary damages from the defendants. (Doc. 8, p. 79).

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to divide the *pro se* action into five counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Wood and Clark failed to protect Plaintiff from a violent attack by his cellmate in violation of the Eighth Amendment.

**Count 2 –** Lind issued Plaintiff a false disciplinary ticket for fighting to shield Wood from liability for Plaintiff's injury in violation of the Fourteenth Amendment.

**Count 3 –** Heck and Myers have a practice of finding both inmates guilty for fighting regardless of the circumstances in order to shield IDOC and other staff from liability, in violation of the Fourteenth Amendment.

**Count 4 –** Peek, Shah, and Brummel showed deliberate indifference to Plaintiff's serious medical needs involving an injured left eye and pain associated therewith in violation of the Eighth Amendment.

**Count 5 –** Baldwin, Lashbrook, Stacy Brown, Hill, and Christine Brown showed deliberate indifference to Plaintiff's serious medical needs involving an injured left eye and pain associated therewith in violation of the Eighth Amendment by failing to respond to Plaintiff's grievances and complaints regarding his lack of treatment.

As discussed in more detail below, Counts 1 through 5 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed with prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Failure to Protect

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials

have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Notably, correctional officers are not required to place themselves in harm's way when attempting to break up a fight between inmates. *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007). Furthermore, a defendant's willingness to take affirmative steps aimed at stopping the situation is relevant to whether that defendant showed deliberate indifference. *See id.*; *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (defendant "took other steps to intervene by promptly calling for back-up and monitoring the fight from the secure area until other officers arrived").

In this case, Plaintiff has alleged that Wood failed to respond in a timely manner to his shouts and emergency button summons, and when Wood did respond, he put Plaintiff in harm's

way by cuffing him first without assessing whether doing so would put him at greater risk of harm. Wood also shouted at Plaintiff's cellmate to stop the attack on Plaintiff once it reconvened, which lends itself to the argument that his actions did not, in fact, show deliberate indifference. At this stage, however, Plaintiff has put forth a claim for failure to protect against Wood, so Count 1 may proceed against him. Count 1 will be dismissed as to Clark, however, as the only allegation Plaintiff makes against Clark is that, as the cell placement officer, she moved him into the cell in which he was attacked. (Doc. 8, p. 60). Plaintiff does not allege Clark knew of a specific, impending, and substantial threat to his safety, and Clark cannot be held liable for the generalized risk of harm Plaintiff faces due to his incarceration.

### Count 2 –False Ticket Due Process

Plaintiff claims that his rights were violated when Lind wrote him a disciplinary ticket for fighting, which subsequently led to a disciplinary hearing. Plaintiff alleges that he was attacked by another inmate, that he was not fighting, and that Lind knew this. Plaintiff claims that this amounted to a violation of due process.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the First Amended Complaint, Plaintiff argues that he was not provided the procedural

protections outlined in *Wolff* because he was found guilty by the adjustment committee, Heck and Myers, pursuant to their policy of finding inmates guilty for fighting tickets to shield IDOC staff from liability for failure to protect. A plaintiff states a claim for violation of procedural due process rights when he alleges that defendants have filed and/or approved disciplinary tickets, reports, and other documents that contain false charges that are not supported by any evidence. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Plaintiff has sufficiently made these allegations, in that he claims that Lind was aware that Plaintiff was a victim of violence, but wrote the disciplinary ticket for fighting regardless, and that he was denied an impartial disciplinary hearing. These allegations are sufficient to state a claim for a violation of procedural due process against Lind for the filing of a false disciplinary ticket, so Count 2 will be allowed to proceed past threshold.

### Count 3 – Disciplinary Hearing Due Process

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir.

9

2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Though this is a low standard, Plaintiff argues that it has not been met in this case, because he was found guilty based on a policy of doing so in order to shield IDOC staff from potential liability, and not based on the evidence. There is a presumption that administrative review boards have acted properly in proceedings such as this one, and often claims such as this one are dismissed in later stages of the proceedings for lack of support, *see Higgason v. Lemmon*, 6 F. App'x 433, 435 (7th Cir. 2001) (inmate's unsupported allegations that prison disciplinary board was ordered to find inmate guilty was insufficient to overcome presumption that board discharged duties properly); *Snell v. Jackson*, No. 04–73883–DT, 2006 WL 212025, at *3–5 (E.D. Mich. Jan. 25, 2006). However daunting this presumption may prove to be, it is a consideration for a later time, as it is enough that Plaintiff has alleged that Heck and Myers acted improperly in causing him to be found guilty. This is sufficient to create a question as to whether Heck and Myers acted impermissibly in finding him guilty without properly considering the evidence in his hearing, and for this reason, this claim cannot be dismissed at this time.

## Count 4 – Deliberate Indifference to Medical Needs

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a

reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Plaintiff has described an adequately serious condition with respect to his left eye injury, and the pain and suffering he has endured from it, to meet the objective prong of the medical indifference standard. Plaintiff also alleges that Peek more or less ignored his injury when he came to the health care unit immediately after sustaining it, despite the blood on his face. He also claims she reported it was not serious without inspecting it at all, when upon inspection, she would have discovered it was in fact severe. Shah also allegedly largely ignored Plaintiff's injury, failed to inspect it, and failed to arrange for it to be inspected by an eye doctor in a reasonable amount of time. Brummel, the eye doctor, allegedly did only a cursory inspection of Plaintiff's eye the first appointment Plaintiff had, and later decided Plaintiff's injury warranted an x-ray. When the x-ray results showed Plaintiff needed surgery, Brummel allegedly refused to seek approval for Plaintiff's surgery, citing a "one good eye" policy of IDOC. At this early stage, these allegations satisfy the subjective component of the deliberate indifference standard.

Count 4 against Peek, Shah, and Brummel will therefore be allowed to proceed.

## **Count 5 – Grievance Officials**

It is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

Plaintiff has alleged that he informed, via grievance or otherwise, many of the defendants about his medical issues. He claims that he contacted, among others, Baldwin, Lashbrook, Stacy Brown, Hill, and Christine Brown about his pain and suffering, and that they had personal knowledge of it. (Doc. 8, p. 59). He has attached many documents and grievances to his First Amended Complaint to support this claim against Baldwin (Doc. 8, p. 28), Lashbrook (Doc. 8, pp. 29, 33, 40), Stacy Brown (Doc. 8, pp. 33, 35, 38, 39), Hill (Doc. 8, pp. 43, 47), and Christine

Brown (Doc. 8, pp. 57, 60). He claims that, despite his complaints, these defendants failed to respond to or seek to remedy the alleged constitutional violations, instead turning a blind eye to them. At this stage, this is enough to state a claim against Baldwin, Lashbrook, Stacy Brown, Hill, and Christine Brown, so Count 5 will proceed.

### Remaining Defendants

Plaintiff has included Jesse D. Carpenter, the inmate who allegedly attacked him, as a defendant in this lawsuit. A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). Carpenter is a prisoner, not a state actor. Because of this, he will be dismissed with prejudice from this lawsuit.

Plaintiff has also included Jeff Cripps, a social worker, Mr. Cleland, Chief of Security, Mr. Heartman, counselor for segregation, Ms. Brintnie, an nurse, and Mr. Huseman, a member of the medical staff in the prison, as defendants in this action. Plaintiff has not made any specific allegations against these defendants in his statement of claim, nor has he provided any information regarding how these defendants may have been involved with, aware of, or capable of preventing or remedying, any of the constitutional violations alleged.

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff has merely alleged that he "made contact with" these defendants and that they "had personal knowledge of his pain and suffering," without providing any further detail. (Doc. 1, p. 59). The allegations against these defendants therefore do not satisfy the *Twombly* pleading standard, and Cleland, Cripps, Heartman, Brintnie, and Huseman will be dismissed, without prejudice, from this action.

Finally, Plaintiff has included Wexford Health Sources as a defendant in this action. Plaintiff makes no allegation that any individual defendant acted or failed to act as a result of an official policy espoused by Wexford, which would be required in order to hold Wexford liable in this action. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). Plaintiff instead alleges that Springfield, presumably meaning IDOC, propagates the "one good eye" policy cited by Brummel. For this reason, Wexford will be dismissed without prejudice from this action.

## **Pending Motions**

Plaintiff has filed two Motions for Recruitment of Counsel (Docs. 3, 10), which are **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

Plaintiff has filed two Motions for Service of Process at Government Expense (Docs. 4, 11), which are **DENIED** as moot. It is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshals Service or other process server because the Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **WOOD.** This claim is considered **DISMISSED** without prejudice as against **CLARK**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **LIND**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **HECK** and **MYERS**.

**IT IS FURTHER ORDERED** that **COUNT 4** shall **PROCEED** against **PEEK**, **SHAH**, and **BRUMMEL**.

**IT IS FURTHER ORDERED** that **COUNT 5** shall **PROCEED** against **BALDWIN**, **LASHBROOK**, **STACY BROWN**, **HILL**, and **CHRISTINE BROWN.**

**IT IS FURTHER ORDERED** that **CARPENTER** is **DISMISSED** with prejudice, and **CLARK**, **CLELAND**, **CRIPPS**, **HEARTMAN**, **BRINTNIE**, **HUSEMAN**, and **WEXFORD HEALTH SOURCES** are **DISMISSED** without prejudice from this action because the First Amended Complaint fails to state a claim for relief against these defendants.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** through **5**, the Clerk of Court shall prepare for **WOOD**, **LIND**, **HECK**, **MYERS**, **PEEK**, **SHAH**, **BRUMMEL**, **BALDWIN**, **LASHBROOK**, **STACY BROWN**, **HILL**, and **CHRISTINE BROWN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that

defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings, including a decision on Plaintiff's Motions for Recruitment of Counsel (Docs. 3, 10). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact

that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 8, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**