IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES A. COX, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 16-CV-1096-NJR-DGW |
| JACQUELINE LASHBROOK, CHRISTINE BROWN, ALLAN J. BRUMMEL, JOHN R. BALDWIN, LES WOOD, TRACI PEEK, BART LIND, LPN M. HILL, CHARLES W. HECK, MARCUS A. MYERS, VIPIN SHAH, and STACEY BROWN, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on a Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 75), which recommends denying the Motion for Summary Judgment on the issue of exhaustion filed by Defendants Allan Brummel, Marcia Hill, Traci Peek, and Vipin Shah (Doc. 54); granting in part and denying in part the Motion for Summary Judgment on the issue of exhaustion filed by Defendants John Baldwin, Christine Brown, Stacey Brown, Charles Heck, Jacqueline Lashbrook, Bart Lind, and Marcus Myers (Doc. 56); and dismissing Counts II and III against Defendants Lind, Heck, and Myers without prejudice. The Report and Recommendation was entered on April 26, 2018 (Doc. 75). Defendants Brummel, Hill,

Peek, and Shah filed timely objections (Doc. 78).[1]

The Court has considered both the evidence and the arguments, and for the reasons explained below, Defendants' objections are overruled, and the Report and Recommendation is adopted.

## BACKGROUND

James Cox, an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Pinckneyville Correctional Center ("Pinckneyville"), alleges his cellmate violently attacked him in August 2015 (Docs. 8, 16). According to Cox, he received inadequate medical care following the attack and was erroneously adjudged guilty of fighting based on a bogus disciplinary ticket (*Id.*).

Following a threshold review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, Cox is proceeding on the following Counts:

**Count I:** Defendant Wood violated Cox's Eighth Amendment rights by not protecting him from his cellmate.

**Count II:** Defendant Lind violated Cox's Fourteenth Amendment rights by issuing him a false disciplinary ticket for fighting in order to shield Defendant Wood from liability for Cox's injury.

**Count III:** Defendants Heck and Myers violated Cox's Fourteenth Amendment rights by finding him guilty of fighting without regard for the circumstances in order to shield IDOC and other staff from liability.

---

[1] Defendants Brummel, Hill, Peek, and Shah filed an objection to the Report and Recommendation on May 14, 2018 (Doc. 78), which met the deadline set forth in the text order accompanying Magistrate Judge Wilkerson's Report and Recommendation (Doc. 75). Cox asserts that Defendants were statutorily required to submit objections by May 11, 2018, which makes their objection untimely. However, the fourteen day deadline for filing objections to a magistrate judge's order, as imposed by 28 U.S.C. § 636(b)(1), is not a jurisdictional deadline. *See Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994). Defendants complied with the Court's order, and their objection is timely.

**Count IV:** Defendants Peek, Shah, and Brummel violated Cox's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by failing to treat his injured left eye.

**Count V:** Defendants Baldwin, Lashbrook, S. Brown, Hill, and C. Brown violated Cox's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by failing to respond to his grievances and complaints regarding a lack of treatment.

(Doc. 16).Magi

On November 8, 2017, with the exception of Defendant Wood,[2] Defendants filed motions for summary judgment based on Cox's failure to exhaust his administrative remedies (Docs. 54, 56). As required by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on January 18, 2018 (Doc. 69, 74). Following the *Pavey* hearing, Magistrate Judge Wilkerson issued the Report and Recommendation currently before the Court (Doc. 75).

## THE REPORT AND RECOMMENDATION & DEFENDANTS' OBJECTIONS

Magistrate Judge Wilkerson found that Cox filed eight relevant grievances between August 10, 2015, and August 1, 2016 (Doc. 75, pp. 3–5). Magistrate Judge Wilkerson concluded that Cox failed to exhaust his administrative remedies as to Counts II and III because none of those grievances complained about the disciplinary ticket or the hearing that forms the basis of those counts (*Id.*at pp. 8–9). None of the parties objected to Magistrate Judge Wilkerson's conclusion that Cox failed to exhaust

---

[2] The Court sent three requests for Waiver of Service to Defendant Les Wood but never received a signed waiver from him (Docs. 20, 47, 63). The Court then opted to have Mr. Wood formally served with process by the United States Marshals Service, and service was achieved on May 31, 2018 (Docs. 76, 83). Mr. Wood has not, however, filed an answer or otherwise appeared in this matter.

as to Counts II and III (*see* Doc. 78).

As for Counts IV and V, Magistrate Judge Wilkerson concluded Cox exhausted his administrative remedies (Doc. 75, pp. 9–10). Specifically, Magistrate Judge Wilkerson found credible Cox's testimony that a number of the grievances he submitted in August and September 2015 were never responded to, rendering the grievance process unavailable, and thus Cox is deemed to have exhausted his claims (*Id.* at p. 10). In the alternative, Magistrate Judge Wilkerson concluded that Cox's emergency grievances dated September 4, 2015, and December 21, 2015, were fully exhausted and sufficient to cover his claims in Counts IV and V (*Id.*).

With respect to the September 4th grievance, Magistrate Judge Wilkerson found that it "was not expedited as an emergency," and Cox "did not appeal the decision to the ARB" (Doc. 75, pp. 4, 10). As for the December 21st grievance, Magistrate Judge Wilkerson determined that it was not expedited as an emergency, but he did not indicate whether Cox appealed to the Administrative Review Board ("ARB") (*see id.* at pp. 4–5, 10). Magistrate Judge Wilkerson ultimately determined these two grievances were fully exhausted because Cox was not required to appeal the warden's determination that the grievances were not emergencies (*Id.* at p. 10). In reaching this determination, Magistrate Judge Wilkerson relied on the Seventh Circuit's non-precedential opinion in *Bentz v. Gosh*, which stated,

> [A]n Illinois inmate who asks the warden to handle a grievance on an emergency basis need not resubmit that complaint as a normal grievance after the warden concludes that the grievance does not present an emergency. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citing 20 ILL. ADMIN. CODE § 504.840). <u>Under these circumstances Illinois rules</u>

<u>do not require him to appeal that decision to the [ARB]</u>.

718 F. App'x 413, 418 (7th Cir. 2017) (emphasis added).

Magistrate Judge Wilkerson further concluded the September 4th and December 21st grievances were sufficient to cover Cox's claims against all of the Defendants in Counts IV and V, even though some Defendants were not specifically named in the grievances (Doc. 75, p. 9). The forms Cox used only directed him to provide a "brief summary of grievance" and did not direct him to list the persons involved (*Id.*). Furthermore, the grievance officer reviewed Cox's medical records in order to respond to some of his grievances, and therefore, the prison was aware of who Cox's treatment providers were (*Id.*). Thus, Magistrate Judge Wilkerson concluded that Cox's failure to specifically name the Defendants "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." (*Id.*).

Defendants Brummel, Hill, Peek, and Shah lodged two objections to Magistrate Judge Wilkerson's conclusion that Cox exhausted his administrative remedies as to them regarding Counts IV and V (Doc. 78). First, Defendants Hill, Peek, and Shah dispute that any of the grievances were sufficient to exhaust as to them because they were not named in the grievances and/or the grievances do not describe any specific complaint against them relative to the medical treatment they provided (*Id.* at pp. 2–6). Second, Defendants Brummel, Hill, Peek, and Shah dispute that an inmate is not required to appeal the warden's rejection of a grievance as an emergency (*Id.* at pp. 6–9).

## DISCUSSION

Because timely objections were filed, the Court must undertake a *de novo* review

of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788.

### A. Exhaustion of Emergency Grievances

The Court chooses to first address Defendants' second argument regarding the proper procedure for exhausting emergency grievances. As an IDOC inmate, Cox was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. Pertinent to this case is the regulation regarding emergency procedures. 20 ILL. ADMIN. CODE § 504.840 (2015). Under § 504.840, a prisoner can request a grievance be handled on an emergency basis by forwarding the grievance directly to the warden. *Id.* If the warden determines the grievance is, in fact, based on an emergency, the warden is required to process and respond to the grievance on an expedited basis. *Id.* If the prisoner is unsatisfied with the warden's expedited response, he can appeal to the ARB for a final determination from the Director of the IDOC. *See id.* at § 504.850(a), (g). On the other hand, if the warden determines that the grievance is

not an emergency, the Administrative Code does not indicate how things are supposed to proceed. *See* 20 ILL. ADMIN. CODE § 504.840, 504.850 (2015).[3] The Seventh Circuit has never explicitly held that a prisoner is required to appeal the warden's determination that a grievance is not an emergency, although a number of judges in the district courts throughout the Circuit have.[4] But in November 2017, the Seventh Circuit issued its decision in *Bentz v. Ghosh*, which stated in pertinent part, "after the warden concludes that the grievance does not present an emergency . . . Illinois rules do not require [the prisoner] to appeal that decision to the [ARB]." 718 F. App'x 413, 418 (7th Cir. 2017) (unpublished). *See also Boyce v. Illinois Dep't of Corr.*, 661 F. App'x 441, 443 (7th Cir. 2016) (noting that prisoner "submitted grievances directly to the warden as emergencies, and our decision in *Thornton v. Snyder* implies that this may have been enough.").

Defendants argue that Magistrate Judge Wilkerson should not have relied on *Bentz* because the Seventh Circuit got it wrong in that case (Doc. 78, pp. 6–9). Specifically, Defendants contend "the *Bentz* case misapplies the law and it would violate public policy if adopted by this Court" because "inmates would be permitted to

---

[3] As of April 1, 2017, it is no longer a mystery how prisoners are supposed to proceed if the warden determines a grievance should not be handled on an emergency basis because the Illinois Administrative Code was revised to provide that the prisoner should be told to resubmit the grievance as non-emergent in accordance with the standard grievance process. 20 ILL. ADMIN. CODE § 504.840(c) (2017).

[4] *Harvey v. Duncan*, Case No. 16-cv-343-NJR-DGW, Doc. 55 (S.D. Ill. Mar. 31, 2017); *Owens v. Duncan*, No. 15-CV-1169-MJR-SCW, 2017 WL 895591, at *5 (S.D. Ill. Mar. 7, 2017); *Pendegraft v. Butalid*, No. 15-CV-816-NJR-DGW, 2016 WL 5349473, at *3 (S.D. Ill. Sept. 26, 2016); *Brown v. Duncan*, No. 15-CV-115-JPG-PMF, 2015 WL 8274565, at *1 (S.D. Ill. Nov. 5, 2015), *report and recommendation adopted*, 2015 WL 8150968 (S.D. Ill. Dec. 8, 2015); *Valenti v. Godinez*, No. 14-CV-673-SMY-PMF, 2015 WL 2194503, at *2 (S.D. Ill. May 7, 2015); *Gevas v. Shearling*, No. 14-CV-134-NJR-DGW, 2014 WL 6790178, at *5 (S.D. Ill. Dec. 2, 2014); *Holmes v. Overall*, No. 13-CV-290-JPG-PMF, 2014 WL 5293193, at *2 (S.D. Ill. Oct. 16, 2014); *Johnson v. Orlin*, No. 13-CV-664-NJR-DGW, 2014 WL 2772800, at *3 (S.D. Ill. June 19, 2014); *Quigley v. Hardy*, No. 11 C 9279, 2013 WL 5781737, at *3 (N.D. Ill. Oct. 24, 2013) (listing other cases from the Northern and Central Districts of Illinois).

circumvent the administrative process by simply marking every grievance as an emergency, which would render the processes set forth in the PLRA moot (*Id.* at pp. 7, 9).

While the Court recognizes that *Bentz* was issued as an unpublished non-precedential order that does not constitute the law of the Seventh Circuit, *see Bentz*, 718 F. App'x 413; Seventh Circuit Rule 32.1(b), the Court still finds it to be persuasive authority regarding exhaustion of administrative remedies for rejected emergency grievances. *See Merriweather v. Wexford Health Sources, et. al.*, Case No. 3:16-CV-1098-NJR-DGW, 2018 WL 4444407, at *4 (S.D. Ill. Sept. 18, 2018) (electing to follow *Bentz*'s conclusion that the Illinois Administrative Code does not require an inmate to appeal the warden's decision not to process a grievance as an emergency); *Viverette v. Wexford Health Sources Inc.*, No. 17-CV-586-JPG-DGW, 2018 WL 3526501, at *4 (S.D. Ill. July 23, 2018) (same); *Dent v. Burrell*, Case No. 3:16-CV-01263-NJR-DGW, 2018 WL 968513, at *4 (S.D. Ill. Feb. 20, 2018) (same).

But even if the Court elected not to follow *Bentz*, there are alternate reasons to find that the September 4th and December 21st grievances were fully exhausted. With respect to the September 4th emergency grievance, the warden determined six days after it was submitted that the grievance was indeed an emergency and should be expedited (Doc. 55-3, p. 8). Unfortunately, however, the warden took no other action. When Cox still had not received a response from the warden on the merits of the grievance over a month later, he asked his counselor about the status of the grievance (Doc. 8, p. 32). According to Cox, he was told that he had to resubmit the grievance to

his counselor, and he did so (Doc. 64-1, p. 5; *see* Doc. 55-3, p. 3). But he also sent the grievance to the ARB (Doc. 64-1, p. 5). The ARB received the grievance on October 21 (Doc. 55-1; *see* Doc. 55-3, pp. 7, 8), but Cox never received a response from the ARB (Doc. 55-3, p. 7; Doc. 64-1, p. 6). It looks as though the ARB opted to send the grievance directly back to the grievance officer at Pinckneyville on October 29th because "it was marked emergency by [warden] but not reviewed further" (Doc. 55-1; *see* Doc. 55-3, pp. 7, 8). It also looks as though the grievance was re-dated November 1, 2015, after it arrived back at Pinckneyville (*see* Doc. 55-3, pp. 2, 5). On November 3rd, the grievance officer recommended that the grievance be denied (*Id.* at p. 2). The warden concurred on December 1, 2015 (*Id.*). In other words, it took Cox *three months* to get a response to his grievance that was deemed an emergency.

In the meantime, Cox's counselor also sent the grievance to his counselor, who received it on October 13, 2015 (*Id.*; Doc. 55-3, p. 3). In the section of the grievance where the warden is supposed to indicate whether the grievance was of an emergency nature, both the "yes" box and the "no" box are checked (Doc. 55-3, p. 3). The checkmark in the "no" box is also circled, as if to denote that the "yes" box was checked by mistake and the "no" box was the warden's real answer (*Id.*). But there's no indication as to who checked and circled the "no" box or when it was done (*see id.*). Furthermore, the counselor took no action on the grievance for almost four months (*see id.*). She finally responded to the grievance on February 10, 2016 (*Id.*), which was *after* the grievance officer and warden had already responded (*Id.* at pp. 2, 5). Cox appealed the grievance to the ARB a second time; the ARB received his appeal on June 29, 2016 (*Id.* at p. 1). The

ARB rejected the appeal on July 9, 2016, because it was not submitted within the 30-day timeframe outlined in the Administrative Code (*Id.*).

It is well settled that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002). In this case, Cox was stymied in his attempts to exhaust the September 4th grievance because prison officials turned the grievance process into a royal disaster. The Administrative Code requires the warden to respond to non-emergency grievances within two months, when reasonably feasible, 20 ILL. ADMIN. CODE § 504.840(d) (2015), and it is therefore axiomatic that the warden must respond to an emergency grievance in well under two months. Cox's grievance was deemed an emergency, but a month went by with no response. Cox brought the grievance to the attention of prison officials, but still nothing happened. Then he reached out to the ARB for help, but he was met with silence. He also resubmitted the grievance to his counselor, but she took no action. The warden's abdication of her duty to issue an expedited response, the ARB's decision to leave Cox in the dark, and his counselor's failure to take any timely action rendered the grievance process unavailable, and Cox was not required to take any further action to keep his grievance alive.

As for the December 21st emergency grievance, the warden determined three days after it was submitted that the grievance was not actually an emergency (Doc. 55-7). Cox then submitted the grievance to his counselor to begin the normal grievance process (even though it had been well-established for over a decade that the law did not require him to do so). *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005)). His

counselor received the grievance on January 11, 2016, and responded two days later (Doc. 55-7). Cox testified that he then submitted the grievance to the grievance officer, but he never received a response (Doc. 64-1; Doc. 73). Cox sent the grievance to the ARB, and it was received on June 29, 2016 (Doc. 55-7). The ARB rejected the appeal on July 9, 2016, because it was not submitted within the 30-day timeframe outlined in the Administrative Code (*Id.*).

Magistrate Judge Wilkerson found credible Cox's testimony that he submitted his grievances to the grievance officer but did not always receive responses (Doc. 75, p. 5), and that credibility determination is entitled to deference. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). The Court thus finds that the grievance officer's failure to respond to the December 21st grievance rendered the grievance process unavailable to Cox. That his subsequent appeal to the ARB was rejected as untimely is therefore irrelevant.

In sum, Cox is deemed to have fully exhausted his administrative remedies as to both the September 4th and December 21st grievances. Accordingly, Defendants' second objection to Magistrate Judge Wilkerson's Report and Recommendations is overruled.

**B. Exhaustion as to Defendants Traci Peek and Dr. Vipin Shah**

Cox is proceeding against Traci Peek, a nurse at Pinckneyville, and Vipin Shah, a medical doctor at Pinckneyville, in Count IV for deliberate indifference, on the basis that they failed to treat his injured left eye (Doc. 16). Magistrate Judge Wilkerson concluded that Cox exhausted his claim in Count IV (Doc. 75, p. 10), and Defendants

counselor received the grievance on January 11, 2016, and responded two days later (Doc. 55-7). Cox testified that he then submitted the grievance to the grievance officer, but he never received a response (Doc. 64-1; Doc. 73). Cox sent the grievance to the ARB, and it was received on June 29, 2016 (Doc. 55-7). The ARB rejected the appeal on July 9, 2016, because it was not submitted within the 30-day timeframe outlined in the Administrative Code (*Id.*).

Magistrate Judge Wilkerson found credible Cox's testimony that he submitted his grievances to the grievance officer but did not always receive responses (Doc. 75, p. 5), and that credibility determination is entitled to deference. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). The Court thus finds that the grievance officer's failure to respond to the December 21st grievance rendered the grievance process unavailable to Cox. That his subsequent appeal to the ARB was rejected as untimely is therefore irrelevant.

In sum, Cox is deemed to have fully exhausted his administrative remedies as to both the September 4th and December 21st grievances. Accordingly, Defendants' second objection to Magistrate Judge Wilkerson's Report and Recommendations is overruled.

**B. Exhaustion as to Defendants Traci Peek and Dr. Vipin Shah**

Cox is proceeding against Traci Peek, a nurse at Pinckneyville, and Vipin Shah, a medical doctor at Pinckneyville, in Count IV for deliberate indifference, on the basis that they failed to treat his injured left eye (Doc. 16). Magistrate Judge Wilkerson concluded that Cox exhausted his claim in Count IV (Doc. 75, p. 10), and Defendants

Peek and Shah object to that conclusion because neither of them was properly identified in Cox's grievances (Doc. 78, pp. 2–5). The Court finds this objection is without merit.

Contrary to Defendants' contentions (Doc. 78, p. 3), Cox's failure to name or describe them in these grievances does not mean that he failed to exhaust his administrative remedies. "Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010). *Accord Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[Providing] early notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement.") (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")).

While the Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, the grievance forms Cox used asked only for a "Brief Summary of Grievance" (Doc. 64-2, pp. 6, 21). There was no indication on the forms that names had to be provided. 20 ILL. ADMIN. CODE § 504.810(b) (2015). In this circumstance, the Seventh Circuit has held that the omission of names or identifying information does not mean that the prisoner failed to exhaust his administrative remedies so long as the grievances still gave prison administrators a fair opportunity to address the prisoner's complaints. *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) (citing *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir.

2011)); *Jackson v. Shepherd*, 552 F. App'x 591, 593 n.1 (7th Cir. 2014).

The undersigned believes the grievances dated August 10 and September 4, 2015, which were both fully exhausted, can be fairly read to include a complaint about the inadequate medical care Cox had received up to that point (*see* Doc. 55-2; Doc. 55-3). Furthermore, it was readily ascertainable from Cox's medical records which individual had provided care to him.[5] Prison officials consulted and referenced those medical records in responding to Cox's August 10th grievance (*see* Doc. 55-2, p. 3). The same was true for the September 4th grievance (when prison officials eventually got around to issuing a response) (*see* Doc. 55-3, p.2). Furthermore, both responses addressed the grievances on the merits without any indication from prison officials that the grievances were procedurally deficient because Cox had not identified the medical providers by name (*see* Docs. 55-2, 55-3). Under these circumstances, as Magistrate Judge Wilkerson stated, Cox's failure to specifically name Defendants Peek and Shah in his grievances "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." (Doc. 75, p. 9) (quoting *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)).

Accordingly, Defendants Peek and Shah's objection regarding Cox's failure to name them in his grievances is overruled.

---

[5] Medical records attached to Cox's amended complaint indicate that Nurse Peek saw Cox immediately following the altercation with his cellmate on August 6, 2015 (Doc. 8-1, pp. 10–13). The records also indicate that Dr. Shah saw Cox on the date of the altercation (*Id.* at pp. 10, 13), although Cox disputes that Dr. Shah saw him that day (Docs. 8, 16). The records also indicate that Dr. Shah saw Cox on August 11, 2015, five days after the altercation (Doc. 8-1, p. 15).

### C. Exhaustion as to Defendant Marcia Hill

In Count V, Cox is proceeding against Marcia Hill, a nurse at Pinckneyville, for deliberate indifference because she failed to respond to his complaints about lack of treatment (Doc. 16). Magistrate Judge Wilkerson concluded that Cox exhausted his administrative remedies as to Count V (Doc. 75, p. 10), and Hill objects to that conclusion (Doc. 78, pp. 5–6). This objection is without merit.

The grievance dated November 7, 2015, explicitly names Hill as one of the persons at the prison who ignored Cox's requests for medical treatment (Doc. 55-6, p. 3). Cox's counselor responded to the grievance on November 16, 2015 (*Id.* at p. 2). Cox testified via his affidavit that he never received a response from the grievance officer (Doc. 64-1, p. 9). At the *Pavey* hearing, Cox reiterated several times that every time he received his counselor's response to a grievance, he always forwarded the grievance on to the grievance officer, but he did not always receive a response from the grievance officer (Doc. 73, pp. 34, 39–40, 42). Magistrate Judge Wilkerson found Cox's testimony credible (Doc. 75, pp. 5, 10), and that credibility determination is entitled to deference. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011).

Accordingly, the Court concludes the grievance process was rendered unavailable when the grievance officer failed to respond to Cox's November 7th grievance, and Cox is deemed to have exhausted this grievance. Defendant Hill's objection regarding Cox's failure to exhaust as to her is overruled.

## CONCLUSION

For these reasons, the Court **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 75). The Court **DENIES** the Motion for Summary Judgment filed by Defendants Brummel, Hill, Peek, and Shah (Doc. 54); **GRANTS** in part and **DENIES** in part the Motion for Summary Judgment filed by Defendants Baldwin, C. Brown, S. Brown, Heck, Lashbrook, Lind, and Myers (Doc. 56). The Court **GRANTS** the motion as to Defendants Lind, Heck, and Myers and **DISMISSES** without prejudice those Defendants, as well as Counts II and III of Cox's First Amended Complaint. The Court **DENIES** the motions as to Defendants Baldwin, C. Brown, S. Brown, and Lashbrook.

This case shall proceed as to:

**Count I:** Defendant Wood violated Cox's Eighth Amendment rights by not protecting him from his cellmate.

**Count IV:** Defendants Peek, Shah, and Brummel violated Cox's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by failing to treat his injured left eye.

**Count V:** Defendants Baldwin, Lashbrook, S. Brown, Hill, and C. Brown violated Cox's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by failing to respond to his grievances and complaints regarding a lack of treatment.

**IT IS SO ORDERED.**

**DATED:** September 21, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**